UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHSETTS

KEITH DANIELS,                    )
                                  )       FILED
          Petitioner,             )   IN CLERKS OFFICE
                                  )   2003 DEC 31  A 11: 07
                                  )       Affidavite, of Keith Daniels
                                  )       Motion to Amend Petitioner,
                                  )       Motion under 28 U.S.C. 2255
   v.                             )       Pursuant to Rule 15(a) Fed. R.
                                  )       Civ. P.
UNITED STATES OF AMERICA,         )
                                  )
          Respondent.             )    03   12644 MLW
                                  )

MAGISTRATE JUDGE _Alexander_

AFFIDAVIT OF KEITH DANIELS
IN SUPPORT OF MOTION UNDER 28 U.S.C. § 2255
TO VACATE, SET ASIDE, OR CORRECT SENTENCE

KEITH DANIELS, being duly sworn according to law, does hereby say and affirm as follows.

1. That he is the Petitioner in the above-captioned matter, which concerns a motion under 28 U.S.C. § 2255 ("Motion"), submitted as to an October 23, 2001 judgment in a criminal case, in which Petitioner was sentenced by this Court (Posnor, J.) to a term of 204 months imprisonment. This affidavit is submitted for the purpose of illuminating the claim raised in the Motion: that Petitioner's Sixth Amendment right to effective assistance of counsel was violated during that criminal case. Motion, ¶ 12.

PRIOR PROCEEDINGS

2. The criminal case at issue began with an indictment returned in this Court, Springfield Division. Therein, a

federal grand jury returned a multi-count indictment that named Petitioner and several others as to nine counts of drug distribution and conspiracy offenses.

3. On June 14, 2001, that indictment was superseded. A new indictment alleged that Petitioner and another man as defendants as to eight counts; violation of 21 U.S.C. § 846 (conspiracy to possess with intent to distribute cocaine base), and several violation of 21 U.S.C. § 841, substantive distribution of same.

4. On June 18, 2001, Petitioner pleaded guilty to one count of conspiracy under § 846, and five counts of § 841 distribution (Posnor, J.).

5. On October 23, 2001, Petitioner was sentenced to 204 months imprisonment, five years supervised release and fianncial sanctions (Posnor, J.).

6. Petitioner submitted a notice of appeal, and on August 22, 2002, a panel of the United States Court of Appeals for the First Circuit affirmed the judgment under Anders v. California, 386 U.S. 738 (1967). United States v. Daniels, No. 01-2602 (unpublished summary order). The filing of the instant Motion represents the first incident of legal action since affirmance on appeal.

FACTUAL BASIS FOR THE MOTION

7. In his Motion, Petitioner alleges a claim of ineffective assistance of counsel, raising challenge to the performance of his court-appointed attorney, Mr. David J.

2

Wenc, who represented Petitioner from January 2000 through
the Anders appeal, a period that encompassed Petitioner's
guilty plea and sentencing. (*1) In essense, the Motion
at issue alleges that former counsel Mr. Wenc acted in a
constitutionally deficient manner by failing to properly
advance and preserve a claim of race-based selective
prosecution. Motion, ¶ 12. Simply put, Petitioner asserts
that had former counsel acted in a professionally reasonable
manner in this case, he would have not have abandoned the
selective prosecution claim by failing to exploit certain
discovery materials provided by the government, and,
in doing so, ensuring dismissal of the criminal case
against petitioner on constitutional grounds. Petitioner
asserts that no reasonable, professional attorney would
have followed counsel's course of conduct. As to relief,
Petitioner seeks full exploration of his selective prosecution
claim by the Court, and ultimate dismissal of all charges.

---

(*1)  Mr. Wenc was the last of three attorneys who appeared
in the underlying criminal proceedings on Petitioner's
behalf.  At the outset of the case, Mr. Stewart Grahm was
appointed to represent Petitioner, but was removed due to
a conflict of interest in December, 1998.  He was succeeded
by Mr. George Nassar, who withdrew in November, 1999 for
reasons unclear from the record.  Mr. Wenc followed in
January, 2000, throughout the remaining proceedings.

Counsel's Handling of the Selective Prosecution Claim.

8.   At the time of Mr. Wence's entry into the case,
this Court had conducted extensive proceedings as to a
claim advanced by Petitioner and his codefendants that
the government's prosecution in this case was race-based,
i.e., that the government was indicting only African-
Americans for prosecution of cocaine base ("crack")
distribution offenses.   Petitioner's allegations were
based largely on the efforts of a defendant in another
case before the Springfield Division of the Court, Michael
Tuitt (98-CR-30048-MAP).   The facts underpinning the
claim offered some stark numbers: in 1998, all 19 persons
indicted for crack offenses in Springfield Division were
of African-American or Hispanic descent; this disparity
was also present in 1996, 1997, and the first half of
1999, when the key proceedings were taking place.   See
United States v. Tuitt, 68 F.Supp. 4 (D.Mass. 1999)
(providing statistics); see also Order, United States v.
Daniels, April 12, 2001, at 2-3 (same).   Notably, in the
state Superior Court servicing the same area, nearly
three dozen whites were indicted at a time when 269 had
been commenced against minority defendants.   Whites
represent some 78 percent of the population in that
county, and 93.9 percent in the Western (Springfield)
Division of the federal Court. Tuitt, at 9-10.

9.   Through a series of proceedings in the <u>Tuitt</u> case, Honorable Kenneth P. Neiman, U.S. Magistrate Judge, found that Mr. Tuitt had presented evidence sufficient to warrant direction that the government present detailed discovery materials on the subject of possible selective prosecution (September 10, 1999 Order in <u>Tuitt</u>).  By that order, Defendant, among others, was authorized to inspect these materials.

10.   By February 2001, all of the defendants in the related cases had received a large volume of discovery materials relating to policies of the various state and federal law enforcement agencies involved in their criminal cases, as well as summaries of prosecutions of a number of other persons, Black, White, or Hispanic.  However, shortly thereafter, Mr. Tuitt and several others abandoned their efforts by pleading guilty.  As such, only Petitioner and codefendants Wayne and Tyran Daniels, ultimately moved for dismissal of their cases for selective prosecution.

11.   These motions to dismiss were denied by Judge Posnor on April 12, 2001, who found that Petitioner and the others had failed to carry their burden of "clear evidence" of a discriminatory intent as to the government's prosecution policies.  April 12, 2001, Order, at 8-9. Indeed, Judge Posnor found that Defendant(s) had presented "no evidence" that similarly situated Whites with comparable levels of culpability even "exist[ed]." <u>Id.</u>, at 8.   The

5

materials submitted by Petitioner and his codefendants
were deemed to be "totally blank" of evidence of any
discriminatory intent on the part of the government. Id.,
at 8-9.

12.   Petitioner recalls that when Attorney Wenc
informed him that the denial of the motion meant that all
hope was lost, he quetioned counsel as to why he did not
present voluminous materials that demonstrated such
intent that were in his possession.  Chief among these
materials were those pertaining to a agroup of white men
arrested locally for dealing crack cocaine, and whose
members had documented histories of violent criminality.
Petitioner recalls that counsel's response was that
"none of that mattered," since the motion had been denied,
and advised Petitioner that he should plead guilty to
reduce  his sentencing exposure.  Given his attorney's
apparent disinterest in the subject of selective prosecution,
Petitioner reluctantly agreed to plead guilty.

13.   After Petitioner's guilty plea and sentencing,
Petitioner asked Attorney Wenc to file an appeal based
on the selective prosecution issue.  However, without
consultation with Petitioner, counsel instead elected to
file an Anders Brief.  After Petitioner submitted his
answer to that brief, raising, inter alia, claims of
ineffective assistance of counsel and government misconduct,

6

the First Circuit affirmed the judgment under <u>Anders</u>.
In step with his prior actions, counsel did not bother to
inform Petitioner of the denial of his appeal, leaving
Petitioner to contact the court several months later to
learn of that event on his own.

DISCUSSION

COUNSEL'S FAILURE TO ADEQUATELY PURSUE A
MERITORIOUS CLAIM OF SELECTIVE PROSECUTION WAS
CONSTITUTIONALLY DEFICIENT REPRESENTATION.

A.  PRINCIPLES OF REVIEW.

14.  Ineffective assistance of counsel claims are
appropriately advanced via a motion under 28 U.S.C.
§ 2255. <u>Knight v. United States</u>, 37 F.3d 769, 772 (1st
Cir. 1994).  Such claims are reviewed under the standard
set forth in <u>Strickland v. Washington</u>, 466 U.S. 668
(1984), which requires that a complaining petitioner
demonstrate (1) that counsel made errors falling "outside
the wide range of professionally competent assistance"
or an "objective standard or reasonableness," <u>id.</u>, at
688, and (2) that, but for counsel's unprofessional erros
errors, there is a "reasonable probability" that the
outcome of the proceeding would have been different. <u>Id.</u>,
at 694.  A reasonable probability is one "sufficient to
undermine confidence in the outcome," <u>id.</u>, and such
review contemplates "whether the result of the proceeding
was fundamentally unfair or unreliable." <u>Tejeda v. Dubois</u>,

7

142 F.3d 18, 22 (1st Cir. 1998), quoting <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369 (1993).[*2]

B.    APPLICATION.

15.    Attorney Wenc's failure to fully pursue Petitioner's claim of selective prosecution was a grave error. "Depriving a criminal defendant of his only defense certainly renders the resultant trial fundamentally unfair and unreliable as demanded by <u>Lockhart</u>." <u>Tejeda</u>, 142 F.3d at 25.  Here, the same can be said.

16.    Here, as the record indicates, the Court's primary reason for denying Petitioner's selective prosecution claim was his failure "to identify even one white crack offender whom [he] consider[s] similarly situated to [himself]." Order, April 12, 2001, at 8.  This failure made it impossible for the Court to make a vital comparison of Petitioner versus white drug offenders in the same area of the District. <u>Id.</u>

_____

(*2)  While this case involves a guilty plea, Petitioner respectfully submits that review under <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985), is not the appropriate measure, since the claim at issue focuses on the probable outcome if counsel had acted appropriately at an earlier stage of the case.

17.  Petitioner's selective prosecution claim was
assessed by the Court under <u>United States v. Armstrong8,</u>
517 U.S. 456, 464 (1996).  As the Court noted,

> In order to dispel the presumption that a
> prosecutor has not violated equal protection,
> a criminal defendant must present clear evidence
> to the contrary. [517 U.S. at] 465.  The test
> for dismissal for selective prosecution is
> two-pronged; the claimant must prove that the
> Government]s enforcement technique had a
> discriminatory effect and that it was motivated
> by a discriminatory purpose.  T show discriminatory
> effect, the claimant must show that the similarly
> situated individuals of a different race were
> not prosecuted . . . to prove discriminatory
> intent, a defendant must show that the government
> pursued its course for the forbidden reason; that
> is, it selected or reaffirmed a particular course
> at least in part because of, not merely in spite
> of, its adverse effects upon an identifiable
> group.

Order, April 12, 2001, at 6 (citations and internal
quotation marks omitted).

18.  It is on the "discriminatory effect" prong of
the <u>Armstrong</u> test that counsel's performance was grossly
deficient.  This is so because contrary to the record
presented to the Court by Attorney Wenc and counsel for
Petitioner and his codefendants, there were similarly
situated white offenders available for comparison.  In
materials supplied by the government as to the case of
Dennis Brown, the arrest of several white offenders was
detailed in affidavits of members of a state police task
force.  Notably, these arrestees had criminal records
that equaled -- or exceeded -- those of Petitioner and
federally-prosecuted codefendants.

19.  This point is important, because the government
stated in its papers in this case that Petitioner was
selectd for federal prosecution "because of: (1) the
quantity of drugs involved; (2) his role; (3) his criminal
history; (4) his propensity for violence; and, (5) the
impact on the Mason Square area." Government's January
30, 2001 Memorandum in Opposition to Motions to Dismiss
("Gov.Mem., 1/30/01"), at 6.  The government noted that
Petitioner's criminal past included prior convictions for
possession with intent to distribute controlled substances,
"Armed Assault to Rob," and "A & B with a Dangerous
Weapon." Id.

20.  The white defendants at issue -- all of whom
were charged in state court, not federal -- appear to be
more than similarly situated.  According to a task force
members affidavit seeking a search warrant, these men
constitute a virtually Rogue's Gallery of drug dealing
offenders.  A Vincent Renaud was described as a "professional
crack cocaine dealer." Exhibit A, at 2 (emphasis in
original).  His group was highly organized, with "groups
of two to five persons" making crack sales, in addition
to "twenty-five additional dealers, working with the
above-named[.]"  Id.  As to Mr. Renaud's criminal past,
the same affidavit records that Mr. Renaud had been
arrested for assault with intent to murder after
stabbing another man in the neck, Exhibit A, at 1, and

10

the assessment that Mr. Renaud's record "shows him to have
possessed firearms..... [and] to be willing to use violence....
and ability to do so" Id at 2.

21. Mr. Renaud's captain, Gary Gauthier has a similar past.
He has been charged with assault with  in intent to murder, and
on separate occasions, assault and battery with a dangerous
weapon (twice), and convictions for robbery. Exhibit A, at 1.
Additionally, their associates, Kevin Sweeney and Timothy
Pelletier have on their records arrests for firearms, assaults
with dangerous weapons, and assults on police officers. Id. In
short, these men conducting their own highly organized  and
lucrative crack cocaine dealing network are strikingly similar
to the men arrested in Petitioner's case. **[ Yet, they were never
prosecuted in federal court, despite their similiarity to the
Petitioner and his codefendants. All these individuals whom
were all prosecuted in state court, months after thier arrest
while all thier charges was still pending. The  only
individual who was refered for federal prosecution and excepted
was Dennis Brown, who is African American and also who is Mr.
Vincent Renaud's and Mr. Gary Gauthier codefendants and which
they are Caucasian.**

22. As respectfully as it can be stated, it would seem
incomprehensible that any reasonable, professional attorney in
Attorney Wenc's shoes would pass over this information  in
support of a motion for dismissal based on selective prosecut-
ion. Given the import of such information in the Court's asse-
ssment under Armstrong, counsel's failure to present this info-

-11-

mation was a decision that undermined Petitioner's motion entir-
ely.

23. It is appearent from the record that the Petitioner
carried the burden of the first prong "Discriminatory Effect"
by showing similary situated individuals of a different race
who could of been prosecuted but was'nt Armstrong, 517 U.S. at
456; see also An Sin v. Wittman, 198 U.S. 500, 507-508 (1905).

24. The second prong "Discriminatory Intent" which Posner
qouted in his denial as being totally blank. The second prong
was'nt blank. To prove discriminatory intent, a defendant must
show that the government pursued its course for the forbidden
reason. That is, it "selected or reaffirmed a particular course
of action at least in part "because of; not merely "in spite of
adverse effect upon an identifiable group." Wayte 470 U.S. at
609, quoting Personal Administrator of Massachusettes v. Feeney,
442 U.S. 256,279 (1979). She argued against a law, a statue,
that by design is nuetral and that the hiring practices are not
por-se invalid.

25. The Peitioner case is distinquished from above mentioned
case. The Petitioner's case of discriminatory intent can clearly
be drawn from the statitics on record. The consistent pattern
of selecting only African Amenrican and minorities for Federal
prosecution for crack/cocaine base and completely excluding the
other protected class entirely; intent can be drawn thorough
statical evidence. Quoting Belmont v. Woodford, 335 F. 3d 1024
(9th Cir.), it qouted on the one hand, the court "has accepted

-12-

statitics as a proof of intent to discriminate in certain limi-
ted context' McCleskey 481 U.S. at 293 and as held that approp-
iate statitics may be enough to establish a primia facia case
including challenges to the composition of the jury venire, id
Tittle VII Employment Discrimination id, at 294, 107 S.Ct. 1756
legislative redistricting, Hunt v. Cromartie, 526 U.S. 541, 548-
49, 119 S.Ct. 1545, 143 L.Ed 2d 69 (1999),and contemporaneous
challenges to a prosecutors Act. See, e.g. Batson v. Kentucky,
476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed 2d 69 (1986). In addition,
the Court has recently reaffirmed Yick Wo v. Hopkins, 118 U.S.
256, 6 S.Ct. 1064, 30 L.Ed 220 (1886). In which the petitioner,
a Chinese laundry owner, relied entirely on statitics to prove
that the City of San Francisco engaged in purposeful discirmin-
ation. See e.g. Armstrong 517 U.S. at 464-65. This case, Bell-
lont v. Woodford,  335 F. 3d 1024 (9th Cir. 2003) was a select-
ive prosecution case in which the Petitioner used statitics to
prove intent, see also Alexander v. Louisana, 405 U.S. 625 also
Castenda v. Partida, 430 U.S. 482 also Teamster v. United States,
431 U.S. 324 at 339.

26. The Petitioner is not just relying on statitical evid-
ence alone on his claim of selective prosecution. The Petitioner
has also provided the Court with similarily situated defendants
in thier case, who could of been  prosecuted federally also see
Exhibit 1. A    . But the Government choose to allow all those
particular defendants to be prosecuted in the state. The Petit-
ioner has also submitted statical evidence of stark disparity
that shows a strong overwhelming inference of discriminatory

-13-

intent.

In U.S. v. Correa-Gomez 160 F. Supp. 2d 748 (E.D.Ky. 2001)
a immigration violation case, the petitioner alleged claims of
selecive prosecution was preven by the showing of similarily
situated individuals of a different protected clas who could of
beon prosecuted but the government choose not to. And this was
also proven by the statitics.

Proof of discriminatory intent must necessarily usually rely
on objective factors, serveral which were lined out in <u>Arlington</u>
<u>Heights v. Metro Housing Corp</u>, 429 U.S. 252, 50 L.Ed 2d 450. the
inquiry is pratical, what a legislature or any offical entity is
"up to" may be plian  from the results its actions achieve, or
the results they aviod. Qouting <u>U.S. v. Correa-Gomez</u>, 160 F.Supp.
2d  748 (2001).

The Petitioner case at hand posess similarities to that of
U.S. v. Correa-Gomez qouting. The representation of the govern-
ment counsel indicated that the Immigration and Naturalization
Service identified the warehouse as a likely employer of illegal
aliens, even prior to excuting an immigration raid. However, the
decision was made by INS supervisors to deal with any discovered
violations on an administrative level only... when the raid took
place and eighty seven  (87) illegal aliens were captured.  INS
agents requested was denied by supervisors and the caucasion
warehouse  owners was "off the hook" with only an administrat-
ive fine. But the Petitioner in the case  of <u>U.S. v. Correa</u>
<u>Gomez</u> after his raid and illegal aliens was found he was prose-
cuted in federal court.

In the Petitioner case at bar, the Caucasian individual who was arrested in a drug raid was indentified even prior to the drug raid, a Vincent Renaud was indentified as a professional crack dealer. Exhibit A, at 2 but only his codefendant Mr. Dennis Brown who is African American was prosecuted in Federal Court...

## CONCLUSION

A primia facia case for selective prosecution has been established. The facts presented by the Petitioner reflects choices made by the Federeal Government which raises an inference of racial motivation.

Based on the foregoing reasons, the indictments in this case should be dismissed or, in the alternative, an evidentary hearing should be  conducted.

Respectfully Submitted,

Mr. Keith  Daniels

ENCL.

CC: File.

-15-

## AFFIDAVIT

### 38 East Main Street, Apt #2, Millers Falls

24.    On August 16, 1998, VINCENT RENAUD, KEVIN SWEENEY, DOB: 07/19/78, SSN: 025582078, GARY GAUTHIER, DOB: 05/05/79 SSN: 010608524, and TIMOTHY PELLETIER DOB 01/31/80 SSN: 026602074, were arrested in Orange, MA. for two counts of Assault and Battery and one count of Assault with a Dangerous Weapon. VINCENT RENAUD was additionally charged with armed assault with intent to murder. During investigation by Orange PD, it revealed that the above four subjects were involved in an assault on two subjects and during the assault one of the victims received a laceration/puncture to his neck, requiring hospital treatment. RENAUD has been charged as being responsible for the stabbing of Kevin Swan. All charges presently pending in Orange Court. During interview of subject Kevin SWEENEY, he stated that he was already in trouble for a gun incident in which he claims Vincent RENAUD was guilty of, rather than himself. SWEENEY'S BOP indicates that there are open cases in the Greenfield District Court for Breaking and Entering with Intent to commit a felony, possession of a firearm, possession of a class D controlled substance. On 12/06/95 SWEENEY was found guilty of Assault with a dangerous weapon (glass bottle) DKT# 9545CR2679. GAUTHIER'S BOP indicates that on 11/19/97 a finding of guilty for Assault and Battery DKT# 9741CR1482, on 04/25/97 a finding of guilty for Assault and Battery DKT# 9741CR0891, on 04/25/97 a guilty finding for Assault and Battery with a Dangerous Weapon DKT# 9741CR0891, on 11/19/97 another guilty finding for Assault and Battery with a Dangerous Weapon DKT# 9741CR0127, GAUTHIER'S juvenile record indicates that he was committed to DYS for Robbery. PELLETIER'S BOP indicates 02/17/98 two findings of guilty of Assault and Battery DKT# 's 9741CR2788A and 9741CR2788B, two dismissed Assault and Battery Dangerous weapons DKT#'s 9741CR2788C and 9741CR2788D, two findings of guilty of Assaust and Battery on a Police Officer DKT #'s 9741CR2806A and 9741CR2806B, and one dismissed resisting arrest DKT # 9741CR2806C.

25.    During booking GAUTHIER gave an address of Main Street in Millers Falls with telephone number 413-659-2623. This is the same telephone number that RENAUD gave when arrested on 07/30/98 for the disturbance on Avenue A. in Turners Falls.

26.    I have seen 38 East Main Street Millers Falls, MA and describe it as being a three and one half (3 1/2) story wood frame, multi family structure, with gray clapboard, hard shingle siding, black and white trim. There is a small front porch leading to a set of black colored double doors. The number 38 is in black numbers about even with the top right side of the doors. The building is located at the east end of East Main Street on the south side of the street with the front of the building facing north. Apt#2 is located on the first floor, front right side of the building when facing from East Main Street. One gains entry into Apt#2 by entering the front East Main Street door. Once inside the building the door to Apt#2 is the first door on the right side.

27.    Undercover police officers McMillan, Officer Leon Laster and Tpr David Foley have made 30 purchases of crack cocaine from COREY BYKOSKI, GARY GAUTHIER, MELVIN JONES, DENNIS BROWN, GILBERTO ROSARIO, THOMAS COIRA and NIGEL DOBBINS. Most of these undercover purchases were from various combinations of the above listed dealers, who commonly work in small groups of two to five persons. Twenty-five additional dealers, working with the above named, have also been identified after selling crack

cocaine to the undercover officers. From RENAUD'S association with such a large group of crack cocaine dealers, his direct sales to Off McMillan and the officers observation of a large quantity of crack cocaine inside of his 12 Park St. residence, I believe RENAUD to be a *professional* crack cocaine dealer. I use the term *professional* to differentiate from a person who may "hang with the wrong crowd" or who made a quick sale to earn extra cash. As such, based on my training and experience, I know a professional crack cocaine dealer commonly secures inside his residence evidence of his illicit trade as set forth in paragraph 3, A-L, above.

28.    RENAUD has shown that he has been a crack cocaine dealer for at least eight months. By inviting Off McMillan to 12 Park St. in Turners Falls to in order to conduct a cocaine transaction, and by CRI#1 purchasing crack cocaine on ten different occasions from 75 Fifth St. Turners Falls, RENAUD proved that he utilizes his residence, wherever that may be, to store crack cocaine and conduct sales. That evidence coupled with the information received from CRI#1 shows RENAUD to utilize his residence as a distribution point and storage facility for his product and other evidence listed in paragraph 3, A-L, above. The fact that RENAUD still associates with the above named dealers and is the target of a turf battle between rival crack dealers shows that his move from 12 Park St Turners Falls to 38 East Main St Millers Falls is only a matter of location and not an intent to cease his criminal behavior. As such I feel there is probable cause to believe that RENAUD'S 38 East Main St. Apt #2 Millers Falls residence will contain the same evidence as would have been found in 12 Park St Turners Falls.

29.    I am requesting a no knock search warrant be issued by the court for reasons of officer and occupant safety and to prevent the destruction of evidence by the occupants of 38 East Main Street, Apt#2, Millers Falls, MA. The reasons for such concerns are as follows:

- A police officers best protection against the use of force is surprise.
- The primary interest of the police in serving a search warrant is the safety of all officers and persons present. The second interest is to preserve evidence. Both of these goals can best be served, in this investigation, through a clandestine, unannounced entry by the police at the time of service.
- The fact that RENAUD's criminal record shows him to have possessed firearms in the past. RENAUD record also shows him to be willing to use violence and supports his ability to do so.
- The fact that on 08/16/98 RENAUD and his associate GARY GAUTHIER were arrested for assault and battery with a dangerous weapon and armed assault with intent to murder for stabbing a man in the neck shows him to continue his violent ways.
- The fact that RENAUD has several associates who assisted him with crack cocaine sales to Off McMillan I. Any number of the criminal associates named above may be present inside the apartment during execution and may pose security problems for the police.
- The fact that the crack cocaine being sold by RENAUD is packaged in small plastic twisties that are easily disposed of by being flushed down a toilet in the event of a police raid.



# AFFIDAVIT

## 38 East Main Street, Apt #2, Millers Falls

30.    I am requesting the authority to search all persons found in 38 East Main Street, Apt#2, Millers Falls, (excepting of course, delivery type personal such as US Postal Service, meter readers, etc. who may arrive at the location for legitimate purposes.) who may be found to have such property identified in EXHIBIT B ATTACHED, in his or her possession or under his or her control at the time of the warrant execution (in particular crack cocaine that is easily concealed on a person's body or clothing.)  The reasons are as follows:

* As described above, VINCENT RENAUD works in conjunction with several dealers. As such any person identified by name or number in this affidavit may be found in this apartment as well as other dealers or customers not encountered during this investigation.
* Apt#2 at 38 East Main Street, Millers Fail, is a small private apartments not open to the public.
* The nature of the criminal activity, possession and sale of crack cocaine, is such that the participants constantly shift or change so that it is practically impossible for the police to predict that any specific person or persons will be on the premises at any given time.
* Several of the items described in attached EXHIBIT A are of the size and kind which renders them easily and likely to be concealed on the person.

31.    Wherefore, your affiant prays that the court issue a search warrant pursuant to Chapter 276, Section 1-7 of the General Laws of the Commonwealth of Massachusetts, authorizing a search, during daylight hours of August 21, 1998, of 38 East Main Street, Apt #2, Millers Falls, more particularly described in paragraph 26 above, occupied by VINCENT RENAUD his person, and any other persons present who may be found to have evidence listed in EXHIBIT A attached, and the seizure of all items described in Exhibit A, attached hereto, which items constitute evidence and/or instrumentality of a violation of Massachusetts General Law, Chapter 94C, Section 32C (distribution of cocaine), that if such property or evidence or any part thereof be found that it be seized and brought before the court; together with such other and further relief that the court may deem proper.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 20th DAY OF AUGUST 1998.

Detective Paul Wasielewski

*Sworn and subscribed to before*

*Daniel A. Ford*
*Justice of the Superior Court*

# AFFIDAVIT

24.    On August 16, 1998, VINCENT RENAUD, KEVIN SWEENEY, DOB: 07/19/78, SSN: 025582078, GARY GAUTHIER, DOB: 05/05/79 SSN: 010608524, and TIMOTHY PELLETIER DOB 01/31/80 SSN: 026602074, were arrested in Orange, MA. for two counts of Assault and Battery and one count of Assault with a Dangerous Weapon. VINCENT RENAUD was additionally charged with armed assault with intent to murder. During investigation by Orange PD, it revealed that the above four subjects were involved in an assault on two subjects and during the assault one of the victims received a laceration/puncture to his neck, requiring hospital treatment. RENAUD has been charged as being responsible for the stabbing of Kevin Swan. All charges presently pending in Orange Court. During interview of subject Kevin SWEENEY, he stated that he was already in trouble for a gun incident in which he claims Vincent RENAUD was guilty of, rather than himself. SWEENEY'S BOP indicates that there are open cases in the Greenfield District Court for Breaking and Entering with Intent to commit a felony, possession of a firearm, possession of a class D controlled substance. On 12/06/95 SWEENEY was found guilty of Assault with a dangerous weapon (glass bottle) DKT# 9545CR2679. GAUTHIER'S BOP indicates that on 11/19/97 a finding of guilty for Assault and Battery DKT# 9741CR1482, on 04/25/97 a finding of guilty for Assault and Battery DKT# 9741CR0891, on 04/25/97 a guilty finding for Assault and Battery with a Dangerous Weapon DKT# 9741CR0891, on 11/19/97 another guilty finding for Assault and Battery with a Dangerous Weapon DKT# 9741CR0127, GAUTHIER'S juvenile record indicates that he was committed to DYS for Robbery. PELLETIER'S BOP indicates 02/17/98 two findings of guilty of Assault and Battery DKT# 's 9741CR2788A and 9741CR2788B, two dismissed Assault and Battery Dangerous weapons DKT#'s 9741CR2788C and 9741CR2788D, two findings of guilty of Assault and Battery on a Police Officer DKT #'s 9741CR2806A and 9741CR2806B, and one dismissed resisting arrest DKT # 9741CR2806C.

25.    During booking GAUTHIER gave an address of Main Street in Millers Falls with telephone number 413-659-2623. This is the same telephone number that RENAUD gave when arrested on 07/30/98 for the disturbance on Avenue A. in Turners Falls.

26.    I have seen 38 East Main Street Millers Falls, MA and describe it as being a three and one half (3 1/2) story wood frame, multi family structure, with gray clapboard, hard shingle siding, black and white trim. There is a small front porch leading to a set of black colored double doors. The number 38 is in black numbers about even with the top right side of the doors. The building is located at the east end of East Main Street on the south side of the street with the front of the building facing north. Apt#2 is located on the first floor, front right side of the building when facing from East Main Street. One gains entry into Apt#2 by entering the front East Main Street door. Once inside the building the door to Apt#2 is the first door on the right side.

27.    Undercover police officers McMillan, Officer Leon Laster and Tpr David Foley have made 30 purchases of crack cocaine from COREY BYKOSKI, GARY GAUTHIER, MELVIN JONES, DENNIS BROWN, GILBERTO ROSARIO, THOMAS COIRA and NIGEL DOBBINS. Most of these undercover purchases were from various combinations of the above listed dealers, who commonly work in small groups of two to five persons. Twenty-five additional dealers, working with the above named, have also been identified after selling crack

# AFFIDAVIT

38 East Main Street, Apt #2, Millers Falls                    Page 13 of 14

cocaine to the undercover officers. From RENAUD'S association with such a large group of crack cocaine dealers, his direct sales to Off McMillan and the officers observation of a large quantity of crack cocaine inside of his 12 Park St. residence, I believe RENAUD to be a *professional* crack cocaine dealer. I use the term *professional* to differentiate from a person who may "hang with the wrong crowd" or who made a quick sale to earn extra cash. As such, based on my training and experience, I know a professional crack cocaine dealer commonly secures inside his residence evidence of his illicit trade as set forth in paragraph 3, A-L, above.

28.    RENAUD has shown that he has been a crack cocaine dealer for at least eight months. By inviting Off McMillan to 12 Park St. in Turners Falls to in order to conduct a cocaine transaction, and by CRI#1 purchasing crack cocaine on ten different occasions from 75 Fifth St. Turners Falls, RENAUD proved that he utilizes his residence, wherever that may be, to store crack cocaine and conduct sales. That evidence coupled with the information received from CRI#1 shows RENAUD to utilize his residence as a distribution point and storage facility for his product and other evidence listed in paragraph 3, A-L, above. The fact that RENAUD still associates with the above named dealers and is the target of a turf battle between rival crack dealers shows that his move from 12 Park St Turners Falls to 38 East Main St Millers Falls is only a matter of location and not an intent to cease his criminal behavior. As such I feel there is probable cause to believe that RENAUD'S 38 East Main St. Apt #2 Millers Falls residence will contain the same evidence as would have been found in 12 Park St Turners Falls.

29.    I am requesting a no knock search warrant be issued by the court for reasons of officer and occupant safety and to prevent the destruction of evidence by the occupants of 38 East Main Street, Apt#2, Millers Falis, MA. The reasons for such concerns are as follows:

- A police officers best protection against the use of force is surprise.
- The primary interest of the police in serving a search warrant is the safety of all officers and persons present. The second interest is to preserve evidence. Both of these goals can best be served, in this investigation, through a clandestine, unannounced entry by the police at the time of service.
- The fact that RENAUD's criminal record shows him to have possessed firearms in the past. RENAUD record also shows him to be willing to use violence and supports his ability to do so.
- The fact that on 08/16/98 RENAUD and his associate GARY GAUTHIER were arrested for assault and battery with a dangerous weapon and armed assault with intent to murder for stabbing a man in the neck shows him to continue his violent ways.
- The fact that RENAUD has several associates who assisted him with crack cocaine sales to Off McMillan I. Any number of the criminal associates named above may be present inside the apartment during execution and may pose security problems for the police.
- The fact that the crack cocaine being sold by RENAUD is packaged in small plastic twisties that are easily disposed of by being flushed down a toilet in the event of a police raid.

30.    I am requesting the authority to search all persons found in 38 East Main Street, Apt#2, Millers Falls, (excepting of course, delivery type personal such as US Postal Service, meter readers, etc. who may arrive at the location for legitimate purposes.) who may be found to have such property identified in EXHIBIT B ATTACHED, in his or her possession or under his or her control at the time of the warrant execution (in particular crack cocaine that is easily concealed on a person's body or clothing.)  The reasons are as follows:

   ◆  As described above, VINCENT RENAUD works in conjunction with several dealers. As such any person identified by name or number in this affidavit may be found in this apartment as well as other dealers or customers not encountered during this investigation.
   ◆  Apt#2 at 38 East Main Street, Millers Fall, is a small private apartments not open to the public.
   ◆  The nature of the criminal activity, possession and sale of crack cocaine, is such that the participants constantly shift or change so that it is practically impossible for the police to predict that any specific person or persons will be on the premises at any given time.
   ◆  Several of the items described in attached EXHIBIT A are of the size and kind which renders them easily and likely to be concealed on the person.

31.    Wherefore, your affiant prays that the court issue a search warrant pursuant to Chapter 276, Section 1-7 of the General Laws of the Commonwealth of Massachusetts, authorizing a search, during daylight hours of August 21, 1998, of 38 East Main Street, Apt #2, Millers Falls, more particularly described in paragraph 26 above, occupied by VINCENT RENAUD his person, and any other persons present who may be found to have evidence listed in EXHIBIT A attached, and the seizure of all items described in Exhibit A, attached hereto, which items constitute evidence and/or instrumentality of a violation of Massachusetts General Law, Chapter 94C, Section 32C (distribution of cocaine), that if such property or evidence or any part thereof be found that it be seized and brought before the court; together with such other and further relief that the court may deem proper.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 20th DAY OF AUGUST 1998.

Detective Paul Wasielewski

*Sworn and subscribed to before*

*Daniel A. Ford*
*Justice of the Superior Court*